IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 15–09–BU–DLC |
| Plaintiff, | |
| vs. | ORDER |
| DOUGLAS JAMES GOSNELL, | |
| Defendant. | |

Before the Court is Defendant Douglas James Gosnell's motion to suppress. For the reasons explained, the Court denies the motion.

## Background

In January 2015, Gosnell was indicted for Possession of a Firearm by a Person Under a Domestic Order in violation of 18 U.S.C. § 922(g)(8) and Receipt of a Firearm While Subject of Indictment or Information in violation of 18 U.S.C. § 922(n). Trial is scheduled for May 26, 2015.

At approximately 5:15 p.m. on May 18, 2013, Gosnell drove to the Anaconda-Deer Lodge County Law Enforcement Agency, where he indicated he had warrants for his arrest. Officers confirmed that Gosnell had a warrant from the Justice Court in Missoula County and a California warrant that was only

extraditable within the State of California. Gosnell was apparently served with the Missoula County arrest warrant and escorted into the detention center booking area.

Video and audio of the booking process show Sergeant Heffernan instruct Gosnell to put his personal belongings on a table. Sergeant Heffernan states[1], "Doug, go ahead and put everything here, empty your pockets right here – hat, gloves, coat, guns, knives." (Doc. 24, Exhibit B). Gosnell immediately states, "Gun's out in the car." *Id.* Gosnell then makes several statements regarding his dog, which was in the vehicle he drove to the agency. Gosnell made repeated requests for the officers to take care of his dog.

Sergeant Heffernan then asked Gosnell if officers had permission to go in his car. Gosnell responded, stating "Fuck, yeah. You got permission. Will you take care of my dog?" *Id.* Gosnell continues to request that the officers take care of his dog, and not take it to the pound. The officers respond that they cannot promise to take his dog home, assure him that they will not kill the dog, but do not ask Gosnell any questions. Gosnell then states, "Okay, I'm parked out front, pistol is behind the seat." *Id.* Gosnell then tells the officers to "get Tim up here." *Id.*

---

[1]To the extent the quotes of statements made during the booking process as included in the search warrant differ from the statements as heard on the video and audio recording, the Court relies on the video audio.

This appears to be a request to speak with Chief of Police Tim Barkell. Gosnell later indicates that he also has prescription medications in his vehicle that he will need. The officers continue to book Gosnell, the video ending with Gosnell being placed in a holding cell.

Chief Barkell was contacted, and met with Gosnell the evening of May 18, 2013. Chief Barkell provided Gosnell with a written *Miranda* waiver, on which Gosnell indicated that he understood his rights, wished to speak with the officer, and wished to have an attorney present. According to the search warrant application, Chief Barkell and Sergeant Heffernan approached Gosnell's vehicle with a flashlight and were able to see both the dog and a black nylon holster with a handgun in it. (Doc. 23). The animal and prescription medications were removed from the vehicle. On May 22, 2013, Chief Barkell applied for a search warrant for Gosnell's vehicle. The subsequent search, pursuant to the search warrant, resulted in the seizure of a black H. Weihrauch .357 revolver in a black nylon holster, which was loaded with six rounds of .357 ammunition, and 32 live rounds of .357 ammunition.

## Discussion

Gosnell contends that the inculpatory statements "gun's in the car," and "pistol is behind the seat" must be suppressed because he was subject to a

custodial interrogation prior to being given *Miranda* warnings and that the physical evidence discovered in his vehicle pursuant to the search warrant must be excluded as a result of the initial constitutional violation. The Court denies the motion because the officers did not expressly question Gosnell about potential firearms, nor did their conduct rise to the level of a 'functional equivalent' of express questioning. Further, Chief Barkell was able to see the gun in question in plain sight when he approached the vehicle, per Gosnell's request, to secure his dog.

*Miranda* safeguards attach when a person is subject to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966). An interrogation includes express questioning and its functional equivalent. *Arizona v. Mauro*, 481 U.S. 520, 526 (1987). The functional equivalent of express questioning has been defined as "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980). The Court looks to whether under the circumstances involved in the given case, the questions are reasonably likely to elicit an incriminating response. *United States v. Solano-Godines*, 120 F.3d 957, 961 (9th Cir. 1997). *Miranda* rights are not required for routine booking questions, such as asking for

biographical data necessary to complete booking. *Pennyslvania v. Muniz*, 496 U.S. 582, 601 (1990). During the booking process, officers may remove and list, or inventory, property found on the person or in the possession of an arrested person who is to be jailed. *Illinois v. Lafayette*, 462. U.S. 640, 646 (1983).

Gosnell was in custody after turning himself in, and was undergoing the booking process when he made the statements in question. The question then turns on whether, when Sergeant Heffernan instructed Gosnell to empty his pockets, he should have known that he was reasonably likely to elicit an incriminating response. The defense argues that the officers were familiar with Gosnell, and knew or should have known of his prior felony convictions. This, Gosnell alleges, shows that Sergeant Heffernan's instruction to empty his pockets of everything, including knives and guns, was intended to elicit an incriminating response.

However, the video is clear in showing that Sergeant Heffernan was simply proceeding through the booking process. Sergeant Heffernan did not ask Gosnell if he had any guns, nor did he ask what was in his vehicle. Rather, he listed several items, with no apparent specific intent, in order to instruct Gosnell to turn over any personal belongings on his person for purposes of inventorying them. The fact that Gosnell was familiar with these officers and the booking process also

suggests that he was not under the impression that when asked to empty his pockets, he was being questioned about the location of his firearm. Gosnell's statement, "gun's out in the car" was a voluntary statement given immediately after he was told to empty his pockets. Telling Gosnell to turn over items on his person during booking was not reasonably likely, in this case, to lead to an incriminating statement about the location of his firearm outside in his vehicle. As such, the statement will not be excluded.

The next statement in question, "pistol is behind the seat," was also voluntarily given. Gosnell stated that the pistol was behind the seat after a discussion of what would be done with his dog, and after giving officers permission to remove his dog from his vehicle. Officers never asked about, mentioned, or implied anything regarding the firearm. In fact, their only response to his utterances regarding the firearm were "okay." (Doc. 24, Exhibit B). Police statements about Gosnell's dog were not reasonably likely to lead to an incriminating statement about the exact location of his firearm.

Lastly, the search warrant application states that Chief Barkell was able to see the firearm in question, in plain sight, by looking through the windows of the vehicle. Chief Barkell was looking in the vehicle pursuant to Gosnell's request that he take care of his dog, which was located in the vehicle. Chief Barkell's

plain view observation of the firearm in the holster, as stated in the search warrant, provide probable cause notwithstanding the inclusion of Gosnell's statements regarding the firearm.

In conclusion, the routine booking procedure of inventorying Gosnell's property on his person was not likely, in this case, to lead to an incriminating statement. Gosnell voluntarily stated that his gun was in his car. Further, discussion of Gosnell's dog was not reasonably likely to lead to an incriminating statement and Gosnell's statement that the gun was behind the seat was voluntary. Neither of these statements were obtained as a result of a *Miranda* violation.

IT IS ORDERED that Defendant's motion to suppress (Doc. 21) is DENIED.

DATED this 12th day of May, 2015.

_____
Dana L. Christensen, Chief District Judge
United States District Court